UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Brotherhood of Maintenance of Way
Employes Division, IBT,

    Plaintiff,

v.                                    Case No. 19-13112

Consolidated Rail Corporation,      Sean F. Cox
                                          United States District Court Judge

    Defendant.
_____/

**OPINION AND ORDER GRANTING MOTION TO TRANSFER (ECF No. 6);
GRANTING MOTIONS FOR LEAVE TO FILE (ECF No. 22, 23, and 26); AND
TRANSFERRING THIS CASE TO THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA**

    This case is the latest installment in a decades-old dispute as to whether a railworker union can compel railroads to bargain individually (often known as "local handling") rather than as part of a multi-employer group (often known as "national handling"). In 1994, a federal district court in Washington, D.C. determined that the union was required to participate in national handling. After that decision, the union and the railroads reached a collective bargaining agreement, through national handling, that barred any amendments until November 1, 2019.

    Now that the moratorium on amendments has expired, the union is again challenging the necessity of national handling and asserting a right to bargain on a railroad-by-railroad basis. As part of its effort to avoid national handling, the union has filed four virtually identical lawsuits against various major railroads in three different federal district courts. This case is part of that offensive by the union. In response, a coalition of railroads has sued for declaratory and injunctive

1

relief in the United States District Court for the District of Columbia, asserting that the union's refusal to engage in national handling violates the Railway Labor Act.

On December 23, 2019, the railroad-defendant in this case filed a motion to dismiss, stay, or transfer to the District of Columbia. (ECF No. 6). Identical motions have been filed in the three other cases brought by the union. Since the motion in this case was filed, the three other courts to consider these motions have granted them and transferred those cases to the District of Columbia.

For the reasons below, the Court will likewise grant this motion to the extent that it seeks transfer and will transfer this case to the District of Columbia.

## BACKGROUND

The Railway Labor Act ("RLA") governs the collective bargaining process between railroads and the unions that represent their employees. 45 U.S.C. § 152. Agreements reached through this process do not expire but can be periodically amended by the parties. Compl. ¶ 6. When a party wants to amend a collective bargaining agreement, it must serve written notice of the proposed change (often known as a "Section 6 Notice"). *Id.* No changes may be implemented until bargaining is complete. *Id.* If negotiations over the changes stall, a party may invoke mediation under 45 U.S.C. § 155. If mediation fails, a party may exercise self-help (such as a strike by the union or a lockout by the railroad) unless the parties agree to arbitration under 45 U.S.C. § 157 or the President of the United States establishes a Presidential Emergency Board under 45 U.S.C. § 160. Compl. ¶ 7.

Bargaining between unions and railroads under the RLA can be conducted either one-on-one or through coalitions. When one union bargains with one railroad, it's known as "local

2

handling." Compl. ¶ 10-11. When several railroads or several unions form a coalition to bargain, it's known as "national handling." *Id.*

Plaintiff Brotherhood of Maintenance of Way Employes Division ("BMWED") is an unincorporated labor association and an autonomous division of the International Brotherhood of Teamsters. Compl. ¶ 1. BMWED represents all employees of Defendant Consolidated Rail Corporation ("Conrail") who work "in the class or craft of maintenance of way employee". *Id.* "In the last few decades, most rail carriers, including Conrail, have sought to bargain in coalition with other rail carriers through the National Carriers' Conference Committee ("NCCC")." *Id.* at ¶ 10. "Over that period, rail unions, including BMWED, have sometimes formed coalitions composed of various unions to bargain with the NCCC." *Id.*

BMWED has long objected to bargaining with railroads through national handling. In 1994, BMWED refused to engage in national handling and insisted on bargaining with individual railroads. In response, a coalition of 29 railroads, including Conrail, sued BMWED in the United States District Court for the District of Columbia, seeking declaratory and injunctive relief. *Alton v. S. Ry. Co. v. Brotherhood of Maint. of Way Emps.*, 928 F.Supp. 7 (D.D.C. 1996) ("*Alton I*"). The *Alton I* plaintiffs argued that the BMWED's refusal to engage in national handling violated its obligation under the RLA to "exert every reasonable effort to make and maintain agreements concerning the rates of pay, rules, and working conditions, and to settle all disputes." *See* 45 U.S.C. § 152; *Alton I*, 928 F.Supp. at 10. BMWED counterclaimed, arguing that the railroads violated the RLA by refusing to bargain with their employees' chosen representative through local handling. *Id.* at 10-11.

3

In *Alton I*, the Honorable Thomas Hogan applied the two-part analysis articulated in *Brotherhood of R.R. Trainmen v. Atlantic Coast Line R.R. Co.*, 383 F.2d 225, 229 (D.C. Cir. 1967), *cert denied*, 389 U.S. 1047, which looks to (1) the historical bargaining practices of the parties and (2) whether national handling on a particular issue is practical and appropriate. *Id.* at 229 ("Whether [national handling] is…obligatory will depend on an issue-by-issue evaluation of the practical appropriateness of mass bargaining on that point and of the historical experience in handling any similar national movements.") Judge Hogan granted summary judgment in favor of the railroads, finding that, on the issues of wages, health and welfare, and work rules, the historical practice of the parties had been to resolve these issues through national handling and that such handling was practical and appropriate. *Alton I*, 928 F.Supp. at 16-19.

BMWED appealed Judge Hogan's decision in *Alton I*, but it appears that the parties settled that case while the appeal was pending. *Alton v. S. Ry. Co. v. Brotherhood of Maint. of Way Emps.*, 1997 WL 150109 (D.C. Cir. Feb. 10, 1997) (per curiam order dismissing appeal because "the parties' settlement has disposed of all of the issues pending before the court.")

Shortly after BMWED's appeal was dismissed, BMWED and Conrail entered into a collective bargaining agreement through national handling. Compl. ¶ 8. During the last round of amendments to this agreement, the parties agreed to a moratorium on serving Section 6 notices until November 1, 2019. *Id.*

As the end of the Section 6 moratorium approached, the BMWED launched a renewed campaign against national handling by filing four lawsuits against major railroads in federal courts across the country. On October 23, 2019, BMWED sued the Union Pacific Railroad Company in United States District Court for the District of Nebraska. *Brotherhood of Maint. of Way Emps. v.*

4

*Union Pacific R.R. Co.*, Case No. 19-00466 (D. Neb. Oct. 23, 2019) ("*Union Pacific*"). That same day, BMWED filed this lawsuit against Conrail. (ECF No. 1). The next day, BMWED sued the Norfolk Southern Railway Company in the United States District Court for the Eastern District of Tennessee. *Brotherhood of Maint. of Way Emps. v. Norfolk Southern Railway Company*, Case No. 19-00420 (E.D. Tenn. filed Oct. 24, 2019) ("*Norfolk*"). And on November 4, 2019, BMWED sued the Grand Trunk Corporation in the United States District Court for the Eastern District of Michigan. *Brotherhood of Maint. of Way Emps. v. Grand Trunk Corporation,* Case No. 19-13246 (E.D. Mich. Nov. 4, 2019) ("*Grand Trunk*").[1] In all of these cases, BMWED seeks (1) a declaration that the railroad would violate the RLA if it refused to bargain locally, and (2) an injunction against resolving the upcoming Section 6 amendments through national handling.

Shortly after BMWED filed these lawsuits, a coalition of railroads (which includes Conrail and the defendants from the other BMWED-filed suits) sued BMWED in the United States District Court for the District of Columbia. *Alton & Southern Ry. Co. v. Brotherhood of Maint. of Way Emps.*, Case No. 19-03586 (D.D.C. Nov. 27, 2019) ("*Alton II*"). The railroads' lawsuit is the mirror-image of BMWED's lawsuit: it seeks (1) a declaration that BMWED's refusal to engage in national handling would violate the RLA, and (2) and injunction that would compel BMWED to engage in national handling. *Alton II* was assigned to Judge Hogan.

After *Alton II* was filed, the railroad-defendants in the BMWED-filed cases (which are all represented by the same counsel) filed identical motions to dismiss, transfer, or stay in their respective cases. This case's motion was filed by Conrail on December 23, 2019 (ECF No. 6). In Conrail's motion, it argues (1) the Court should dismiss this case based on the doctrine of issue

---

[1] *Grand Trunk* was assigned to another judge of this district, the Honorable Matthew F. Leitman.

preclusion because BMWED's claims were already rejected by Judge Hogan in *Alton I*; (2) the Court should dismiss this case because BMWED did not, and cannot, join indispensable parties, namely the 25 other railroads represented by the NCCC; (3) if not dismissed, the Court should transfer this case to the District of Columbia, to be resolved alongside *Alton II*; and (4) if not dismissed or transferred, the Court should stay this case pending the resolution of *Alton II*.

The railroad-defendants' motions were being briefed into the Spring of 2020, when the resolution of those motions was delayed by the onset of the coronavirus pandemic ("COVID-19").

In the past month, two important developments have occurred in the litigation related to this case. First, citing the "first-to-file" rule,[2] Judge Hogan stayed *Alton II* pending the resolution of the four BMWED-filed cases. (ECF No. 22-2). Second, the courts in Nebraska and Tennessee, and the other court in this district, have granted their respective railroad-defendant's motion and transferred those cases to the District of Columbia.

## ANALYSIS

Conrail seeks three alternative forms of relief: dismissal, transfer, or a stay. To determine how to consider such a three-headed motion, the Court will look to the decisions of the other courts that have decided nearly identical motions.

**I.** *Norfolk*

In *Norfolk*, the Honorable Clifton L. Corker found that "dismissal or a stay of the proceedings [was] inappropriate" and therefore only addressed the railroad's motion to the extent

---

[2] *See Alton II*, No. 19-03586 (D.D.C. June 25, 2020) (order) ("[T]he usual rule in this Circuit has been that where two cases between the same parties on the same cause of action are commenced in two different Federal courts, the one which is commenced first is to be allowed to proceed to its conclusion first."); ECF No. 22-2, PageID 555.

it sought transfer to the District of Columbia. (ECF No. 22-1, PageID 547).[3] Judge Corker first noted that "[a] transfer of the current action is directly in line with earlier district court decisions to transfer cases on precisely the same issue to the District of Columbia." (ECF No. 22-1, PageID 549-550) (discussing *Int'l Bhd. of Locomotive Engineers v. Consol. Rail Corp.*, No 94-74457, 1994 WL 808075 (E.D. Mich. Dec. 30, 1994) and *Gen. Comm. of Adjustment GO-386 v. Burlington N. R. R.*, 895 F. Supp. 249, 250 (E.D. Mo. 1995)).

After considering these earlier decisions, and the applicable law surrounding the appropriateness of transferring a case to another federal district court, Judge Corker made the following conclusions:

> Accordingly, the Court finds that judicial economy weighs in favor of transferring the current matter to the District of Columbia to allow the identical cases to be decided in a single action. The convenience of the parties also warrants transfer because both parties' counsel are in the District of Columbia, BMWED maintains an office there, and collective bargaining between the parties has historically taken place there. Furthermore, it is inconvenient for both NSR and BMWED to be parties to multiple potentially conflicting actions on the same issue.
>
> Most importantly, the facts weigh against strict application of the first-to-file rule. First, BMWED brought this suit in anticipation that NSR would oppose local handling. [Doc. 1, p. 6]. Second, the policy disfavoring forum shopping also weighs in favor of transfer to the District of Columbia. Although both parties are advocating for a forum with precedent that appears to be more favorable to their respective positions, it looks as if BMWED lost in the District Court for the District of Columbia in 1996 and is now attempting to try again in more favorable forums— this District, the Eastern District of Michigan, and the District of Nebraska. Judicial economy warrants consolidation, which is precisely what NSR and 25 other rail carriers have done by filing suit against BMWED in the District of Columbia.

---

[3] Judge Corker's Opinion in *Norfolk* does not appear to be available on Westlaw, but Conrail has moved for leave to file this opinion as a supplemental authority. (ECF No. 22). Conrail would also like to file Judge Hogan's order staying *Alton II* (ECF No. 22), the opinion in *Union Pacific* (ECF No. 23), the opinion in *Grand Trunk* (ECF No. 26). BMWED does not oppose these motions. Accordingly, the Court will grant Conrail's motions for leave to file and considers the attached exhibits as filed in this case.

7

>Therefore, the interests of justice, including systemic integrity and fairness, weigh heavily in favor of transferring this case to the District of Columbia.

(ECF No. 22-1, PageID 550-551). Accordingly, Judge Corker granted the motion and directed the Clerk of the Court to transfer *Norfolk* to the District Court for the District of Columbia. *Id.*

## II.  *Union Pacific*

In *Union Pacific*, the Honorable Brian Buescher "decline[d] to rule on the motion to dismiss, denie[d] Union Pacific's request to stay…and grant[ed] Union Pacific's Motion to Transfer." *Union Pacific*, 2020 WL 3571817 at *3.

As to Union Pacific's motion to dismiss, Judge Buescher noted that "questions of issue preclusion and failure to join necessary parties are pending before four separate federal district court judges," and that "[i]f each of the four judges rules on dismissal, the potential for conflicting rulings arises and unnecessary duplication of judicial efforts is assured." *Id.* at *4. Judge Buescher concluded that ruling on the motion to dismiss would be inappropriate, given the option of transfer and consolidation with the related litigation:

>As Union Pacific aptly notes, permitting the case to proceed in this district when other cases simultaneously involve "precisely the same issues ... pending in different District Courts leads to the wastefulness of time, energy and money that [the federal transfer statute] was designed to prevent." Filing 12 at 16 (quoting *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26, 80 S. Ct. 1470, 4 L. Ed. 2d 1540 (1960)). And, as Judge Corker determined in a similar case, "dismissal ... is inappropriate," Filing 30-1 at 4, if a single court can be permitted to address the merits of the dismissal motion instead. For these reasons, the Court will not address the merits of Union Pacific's Motion to Dismiss because doing so would be an affront to judicial economy and uniformity.

*Id.* at *4. Judge Buescher then turned to the motion to transfer.

As to transfer, Judge Buescher concluded that the District of Columbia "has subject-matter jurisdiction over the causes of action in this case, personal jurisdiction over the parties, and is the

8

proper venue." *Id.* at *9. Judge Buescher further concluded that "the convenience of the parties and witnesses slightly favors transfer and the interest of justice strongly favors transfer," and that the first-filed rule did not bar transfer to the District of Columbia under these circumstances. *Id.* at *11. Accordingly, Judge Buescher granted the motion to the extent that it sought transfer to the District of Columbia.

### III. *Grand Trunk*

In *Grand Trunk*, the Honorable Matthew F. Leitman declined to rule on the railroad-defendants' motion to extent it sought dismissal or a stay but granted the motion to the extent it sought transfer to the District of Columbia. *Grand Trunk*, 2020 WL 4583366 at *1 (E.D. Mich. Aug. 7, 2020).

To begin, Judge Leitman found that the interest of justice weighed heavily in favor of transfer:

> First, and most importantly, the interest of justice and judicial efficiency factors strongly favor a transfer to the District of Columbia. If BMWED and different railroads continue to litigate in different venues, there is a real risk that one court could mandate that the parties engage in local handling while a different court mandates that the same parties engage in national handling. Thus, this is precisely the kind of dispute that "begs for a single, definite ruling lest bargaining come to a halt due to potentially conflicting proceedings and edicts." [*BMWED v.*] *Consolidated Rail* [*Corp.*], 1994 WL 808075, at *4 [(E.D. Mich. 1994)]. As the court in *Union Pacific* recently held, "there is no question that judicial resources would be best utilized by litigation in a single court (the D.C. Court) where all parties may be joined. In this manner the parties will obtain a single 'national' result rather than numerous 'local' and piecemeal decisions from multiple courts." *Union Pac.*, 2020 WL 3571817, at *10. *See also Consolidated Rail*, 1994 WL 808075, at *6 ("[T]he importance of uniform decision making for the railroad industry's current round of collective bargaining is of paramount importance").
>
> Transfer to the District of Columbia is also in the interest of justice and judicial economy because Judge Hogan, who is overseeing *Alton II*, is intimately familiar with the issues in dispute here. Thus, because Judge Hogan is best positioned to effectively and efficiently resolve this dispute on a national basis for all railroads

9

> across the country, transferring this action to the District of Columbia is in the interest of justice. *See, e.g., Nutrition & Fitness, Inc. v. Blue Stuff, Inc.*, 264 F.Supp.2d 357, 363 (W.D.N.C. 2003) (concluding that it was "expedient" and in the interest of judicial efficiency "to allow a court that is already familiar with [the parties'] essential arguments to adjudicate" transferred case).

*Grand Trunk*, 2020 WL 4583366 at *5. Judge Leitman then determined that the other transfer factors also, on balance, favored transfer:

> The other Section 1404(a) factors – such as the convenience of the parties and witnesses – when considered collectively, also favor transferring this action to the District of Columbia. The "issue in this case is purely a legal one – can [BMWED] successfully insist upon [local] bargaining?" *Consolidated Rail*, 1994 WL 808075, at *4. Thus, "[b]ecause of the solely legal nature of this case, this Court predicts with some certainty (and the parties essentially concede) that this question can be resolved on the basis of a relatively small documentary record and without the need of an evidentiary hearing, let alone a trial. Neither forum, then, should pose an inconvenience to the parties, especially when one considers that each side is represented by highly competent national as well as local counsel." *Id.* Indeed, primary counsel for both BMWED and Grand Trunk are located in Washington D.C., and BMWED maintains an office there. Moreover, to the extent that witnesses may be needed to resolve this dispute, neither party has identified any witnesses who live in this judicial district and for whom it would be more convenient to litigate this dispute here. In addition, "the legal issues in this case center around interpretation of the RLA, a federal statute, not any substantive state law. Therefore, the parties' comfort and familiarity with [Michigan] state law has no bearing on the Court's analysis." *Union Pac.*, 2020 WL 3571817, at *9.

*Grand Trunk*, 2020 WL 4583366 at *5. Judge Leitman then determined that the "first-to-file" rule need not be enforced under those circumstances and ordered *Grand Trunk* to be transferred to the District of Columbia. Id. at *7-*8.

## IV.   Conrail's Motion to Transfer

As *Norfolk*, *Union Pacific*, and *Grand Trunk* make clear, the Court is not treading new ground in considering Conrail's motion. Consistent with those cases, the Court will first consider Conrail's motion to transfer. 28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other

10

district or division where it might have been brought or to any district or division to which all parties have consented."

"As the permissive language of the transfer statute suggests, district courts have 'broad discretion' to determine when party 'convenience' or 'the interest of justice' make a transfer appropriate." *Reese v. CNH America, LLC*, 574 F.3d 315, 320 (6th Cir. 2009). This Court has previously explained:

> In deciding a motion to transfer venue, the Court must determine: (1) whether the action could have been brought in the proposed transferee district, (2) whether a transfer would promote the interests of justice, and (3) whether a transfer would serve the parties' and witnesses' convenience. *United States v. P.J. Dick, Inc.*, 79 F. Supp. 2d 803, 806 (E.D. Mich. 2000); *Perceptron, Inc. v. Silicon Video, Inc.*, 423 F.Supp.2d 722, 728-29 (E.D. Mich. 2006). Factors to be considered include: (1) the convenience of the parties and witnesses; (2) the location of documents and the relative ease of access to sources of proof; (3) the locus of the operative facts; (4) availability of process to compel attendance of witnesses; (5) cost of obtaining witnesses; (6) the forum's familiarity with the governing law; (7) the weight accorded to the plaintiff's choice of forum; (8) trial efficiency; and (9) the interests of justice. *Id.*

*Georgetown Home & Garden, LLC v. Tractor Supply Co.*, 2011 WL 13218003 at * 2 (E.D. Mich. 2011). Another consideration in determining whether to transfer a case is the "first-to-file" rule, which "provides that when actions involving nearly identical parties and issues have been filed in two different district courts, the court in which the first was filed should generally proceed to judgment." *Zide Sport Shop of Ohio, Inc., v. Ed Tobergte Associates, Inc.*, 16 Fed.App'x 433, 437 (6th Cir. 2001). However, the first-to-file rule is not absolute and "[d]istrict courts have the discretion to dispense with the first-to-file rule where equity so demands." *Id.* Notably, "[a] plaintiff, even who files first, does not have a right to bring a declaratory judgment action in the forum of his choosing." *Id.* "Factors that weigh against enforcement of the first-to-file rule include…anticipatory suits." *Id.*

11

Here, there is no dispute that this case could have been brought in the District Court for the District of Columbia; Plaintiffs' counsel conceded that at oral argument. And the interest-of-justice factors and the convenience of the parties weigh heavily in favor of transfer.

To begin, the interest of justice, which includes judicial economy, greatly favors transfer to the District of Columbia. The main crux of this litigation presents a legal question that is at the core of four related pending cases: *Union Pacific*, *Norfolk*, *Grand Trunk*, and *Alton II*. Allowing these cases to proceed along separate tracks would cause the unnecessary duplication of judicial efforts and the potential for conflicting rulings. All of these cases are currently pending in the District of Columbia, which favors transfer to that district. *See GMAC/Residential Funding Corp. v. Platinum Co. of Real Estate & Fin. Servs.*, 2003 WL 1572007, at *2 (D. Minn. Mar. 13, 2003) (citing 17 Moore's Federal Practice § 111.13[1][o]) ("Judicial economy is served by allowing related actions to proceed in the same district.") Judge Hogan has experience with this issue and these parties and will be able to efficiently resolve all of the pending suits, likely at once. "To permit a situation in which [multiple] cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness or time, energy, and money that [the transfer statute] was designed to prevent." *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960).

Next, the convenience of the parties and witnesses favor transfer. Although BMWED is headquartered in this district, it apparently also has an office in the District of Columbia, both parties' primary attorney is located in the District of Columbia, and both parties' have an extensive history of negotiating and litigating labor disputes in the District of Columbia. Moreover, after the transfer of *Norfolk*, *Union Pacific*, and *Grand Trunk*, and the initiation of *Alton II*, the parties will

12

already be litigating this issue (and, to the extent necessary, conducting discovery) in the District of Columbia. If this case is not transferred, the parties would need to adhere to multiple, possibly conflicting, discovery deadlines and briefing schedules. To the extent that witnesses need to testify, or documents need to be produced, such testimony and production would have to occur twice.[4] Moreover, transfer to the District of Columbia would presumably reduce litigation costs by allowing the seemingly identical cases to be consolidated or, at the very least, coordinated.

To be sure, the first-to-file rule and the weight given to a plaintiff's forum choice weigh against transferring this case. But these considerations are not nearly so great where, as here, the plaintiff has filed an anticipatory action for declaratory and injunctive relief. *Zide Sport Shop*, 16 Fed.App'x at 437. Considering that the interests of justice and the convenience of the parties and witnesses weigh strongly in favor of transfer, the first-to-file rule and plaintiff's forum choice do not bar transfer under these circumstances.

## CONCLUSION

For the reasons above, and for the reasons thoughtfully articulated in *Union Pacific*, *Norfolk*, and *Grand Trunk*, the Court **ORDERS** that Conrail's Motion (ECF No. 6) is **GRANTED** to the extent it seeks transfer. The Court expresses no opinion on any other part of Conrail's motion. The Court also **ORDERS** that Conrail's Motions for Leave to File (ECF No. 22, 23, and 26) are **GRANTED**.

---

[4] The Court notes that, according to the parties, discovery in this case is unlikely. At the hearing on this motion, Plaintiff's counsel indicated that this case will likely be resolved based on briefs and declarations. Thus, to the extent that Plaintiff or potential witnesses have a greater convenience interest in this case than they did in *Union Pacific* or *Norfolk*, because of Plaintiff's nearby headquarters, this interest is still slight. And this interest is still outweighed by the interest of justice and the other convenience interests, as described above.

Further, the Court **ORDERS** the Clerk of the Court to **TRANSFER** this action to the United States District Court for the District of Columbia.

**IT IS SO ORDERED.**

Dated: September 4, 2020        s/Sean F. Cox
                                Sean F. Cox
                                United States District Judge